UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JASON JOHN HATTON,

Petitioner,

v.

CHASE ABSTON, Superintendent, Warner Creek Correctional Facility,

Respondent.

Case No. 3:26-cv-01277-AP

**FINDINGS AND RECOMMENDATION**

POTTER, United States Magistrate Judge:

Petitioner Jason John Hatton is currently in the custody of the Oregon Department of Corrections (ODOC) based on a conviction out of Jackson County and has a projected release date of November 2, 2026. Petitioner brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and challenges the legality of his current confinement on grounds that it violates the prohibitions against *ex post facto* laws and bills of attainder and also violates his

rights to procedural due process.[1] Petitioner also moves for his immediate release from custody during the pendency of this action.

There is nothing complicated about Petitioner's conviction and sentence. The complication arose from how ODOC calculated Petitioner's sentence. After initially calculating a release date that gave Petitioner credit for the time he served in pretrial custody, ODOC recalculated his sentence based on its understanding of a change in the law. The result was Petitioner—and others like him—received credit for double the amount of time he spent in pretrial custody and was immediately released.

Upon reconsideration (and significant public outcry), ODOC concluded the re-calculation was incorrect and Petitioner should not have been released. The problem was that there was no mechanism under state law to return him to custody to serve the remainder of the sentence. The Oregon Legislature got involved and passed House Bill 4041, which created a way for the State to petition the courts for a warrant if a person was released early due to a sentencing credit miscalculation. The State invoked that new procedure in Petitioner's case, and the state court issued a warrant for Petitioner and ultimately returned him to ODOC custody. Petitioner now contends that the process created by HB 4041 violated his constitutional rights and seeks release though this habeas proceeding in federal court.

What happened here is troubling. The process of release, reincarceration, release again, then reincarceration again of Petitioner (and others like him) creates uncertainty not only for

---

[1] Petitioner also cites to 28 U.S.C. § 2241 in support of his Petition. Because Petitioner is in custody pursuant to a state court judgment, his Petition is properly brought pursuant to § 2254. *See* 28 U.S.C. § 2254(a) (providing that a federal habeas petition may be brought under § 2254 on "behalf of a person in custody *pursuant to the judgment of a State court* only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States") (emphasis added).

Petitioner and the other defendants caught in this cycle but also for their families, the victims of their crimes, and the victims' families. But federal habeas relief is designed to address constitutional claims in state criminal cases only after the state courts have had the first opportunity to do so, something that has not happened here. And the process Petitioner is challenging did not lengthen the sentence originally imposed, it enabled the State to return Petitioner to the custody of ODOC to serve the sentence he bargained for. As such, the Court recommends that both Petitioner's Emergency Motion for Release and his Amended Petition for Writ of Habeas Corpus be denied.

## BACKGROUND

### I. Petitioner's Criminal Conviction

Petitioner was charged by indictment with one count of Rape in the First Degree, one count of Strangulation, one count of Attempted Sexual Abuse in the First Degree, two counts of Sexual Abuse in the Second Degree, and four counts of Sexual Abuse in the Third Degree. Pet'r Ex. 5 at 12-14 (ECF No. 1-1). The charges arose from Petitioner's abuse of two sixteen-year old girls on June 10, 2023, at a home where Petitioner was staying as a guest. During the night, Petitioner repeatedly digitally penetrated one of the girls and forced the other to touch her friend's vagina. *Id.*; Resp't Ex. 101 at 5-7 (ECF No. 17-1).

On October 25, 2024, pursuant to a negotiated settlement, Petitioner pled guilty to Count 3, Sexual Abuse in the Second Degree, and Count 7, Attempted Sexual Abuse in the First Degree. Pet'r Ex. 5 at 15-19; Resp't Ex. 101 at 4-6, 9. The parties stipulated to a 31-month sentence on Count 3 and a 25-month consecutive sentence on Count 7, an agreement Petitioner's defense counsel characterized as "a very generous offer." Resp't Ex. 101 at 4, 9. The trial court accepted the parties' agreement, noting that the court had mediated the settlement efforts and

would "follow the plea negotiations." *Id.* at 5, 10-11. Accordingly, the trial court sentenced Petitioner to a 31-month term of imprisonment on Count 3 and a consecutive 25-month term of imprisonment on Count 7. The result was a total sentence of 56 months' imprisonment. The trial court also ordered that Petitioner would receive credit for time served, and, as to each count, the criminal judgment provided, "Defendant may receive credit for time served. Defendant shall receive presentence incarceration credits pursuant to ORS 137.370(4)." Pet'r Ex. 1 at 2-3. At that time, Petitioner had served 504 days of presentence incarceration at the Jackson County Jail. Pet'r Ex. 12 at 1-2, 13.

Petitioner was transferred to ODOC custody. ODOC calculated Petitioner's sentence in accordance with the judgment and credited Petitioner with 504 days of time served against the sentence imposed for Count 3. *Id.* at 2. ODOC did not calculate time-served credit against the sentence imposed for Count 7, because it "would result in double counting the time served." *Id.* Petitioner did not dispute ODOC's initial sentence calculation or claim entitlement to duplicate time-served credit.

**II. The First Recalculation of Petitioner's Sentence**

Approximately nine months later, in July 2025, the Oregon Supreme Court addressed the calculation of time-served credits under former ORS 137.370(4). *See State ex. rel. Torres-Lopez v. Fahrion*, 373 Or. 816 (2025) (*Torres-Lopez I*). There, the defendant violated the conditions of probation imposed in Marion County and committed additional, unrelated crimes in Clackamas County. *Id.* at 819. The Clackamas County trial court sentenced the defendant to thirteen months' imprisonment for the new offenses, and the Marion County trial court subsequently revoked his probation and imposed a term of sixty months' imprisonment to be served concurrently with the sentence imposed in Clackamas County. *Id.* at 819-20. The Marion County

trial court also specified in the judgment that the defendant would receive preincarceration credit for time served in Clackamas County and in Marion County, including time served that had been "credited to Clackamas County case #18CR85288." *Id.* at 820.

Despite the trial court's express ruling, ODOC did not credit the defendant with time served in Clackamas County against the defendant's Marion County sentence. ODOC determined that ORS 137.370(2)(a) applied to his sentence, and that statute did not permit double credit for the time served in Clackamas County. *Id.* at 821.[2] The defendant filed a mandamus action in the trial court and argued, in part, that ODOC was required to calculate duplicate credit under former ORS 137.370(4), because the Marion County trial court had specifically granted duplicate credit for time served in Clackamas County. *Id.* at 821-22.[3] The trial court granted relief and the Oregon Court of Appeals reversed. *Id.* at 818.

---

[2] ORS 137.370(2)(a) provides that "for the purpose of computing the amount of sentence served," the "term of confinement includes only… [t]he time that the person is confined by any authority after the arrest for…[t]he crime for which sentence is imposed."

ODOC also determined that the defendant could not receive preincarceration credit for time served between the Clackamas County court's imposition of sentence and Marion County court's revocation of probation, because Petitioner technically was serving his sentence imposed in the Clackamas County case. 373 Or. at 821. This effectively deprived defendant of any credit for his time in pretrial custody because he was serving the two sentences concurrently and the Clackamas County sentence was significantly shorter than the Marion County sentence.

[3] At that time, ORS 137.370(4) provided:

> Unless the court expressly orders otherwise, a person who is confined as the result of a sentence for a crime or conduct that is not directly related to the crime for which the sentence is imposed, or for violation of the conditions of probation, parole or post-prison supervision, shall not receive presentence incarceration credit for the time served in jail toward service of the term of confinement.

Former ORS 137.370(4). The statute has since been amended to add subsections governing the application of presentence incarceration credit to consecutive sentences. *See* Or. Laws 2026, ch. 14, § 11; ORS 137.370(4)(a)-(e).

The Oregon Supreme Court granted review and held that, because the trial court had "expressly" ordered credit for time served in both counties, ORS 137.370(4) authorized duplicate "presentence credit for time spent in jail awaiting resolution of a probation violation matter even though the person was also serving a prison sentence on an unrelated crime." *Id.* at 818-19.

In response to *Torres-Lopez I*, ODOC updated its policies to allow double counting of time-served credit and recalculated the sentences of adults in custody (AICs) that it determined were affected by the decision in *Torres-Lopez I*. Pet'r Ex. 12 at 2. In Petitioner's case, ODOC recalculated his sentence to credit 504 days of time served against both consecutive sentences imposed on Counts 3 and 7, presumably because Petitioner's judgment stated "Defendant may receive credit for time served. Defendant shall receive presentence incarceration credits pursuant to ORS 137.370(4)" as to both counts. Pet'r Ex. 12 at 2; Pet'r Ex. 1 at 2-3. Petitioner's projected release date was accelerated from March 6, 2027 to October 18, 2025, and on September 25, 2025, he was released to transitional leave. Pet'r Ex. 12 at 2.

## III. The Second Recalculation of Petitioner's Sentence and Attempts to Return Him to Custody

In the meantime, ODOC sought reconsideration of *Torres-Lopez I*, and in November 2025, the Oregon Supreme Court reaffirmed its original holding. *State ex. rel. Torres-Lopez v. Fahrion*, 374 Or. 423, 432 (2025) (*Torres-Lopez II*). The Oregon Supreme Court reiterated that former ORS 137.370(4) barred duplicate credit for time served unless the trial court "expressly orders otherwise," and emphasized that *Torres-Lopez I* "did not interpret that provision of the statute or decide what a judgment must say in other contexts covered by subsection (4) to reflect that the court had 'expressly order[ed]' double credit," because "the Marion County court had expressly ordered that [the defendant] would in effect receive 'double credit.'" *Id.* at 425 n. 1.

After *Torres-Lopez II*, ODOC concluded that its recalculation of Petitioner's sentence to include duplicate time-served credit and its release of Petitioner were incorrect. ODOC recalculated Petitioner's sentence for a second time, applying the 504 days of time-served credit to only the sentence imposed on Count 3 and reestablishing a projected release date of April 2027. Pet'r Ex. 12 at 2. Because ODOC determined that Petitioner had not completed his term of incarceration, on November 24, 2025, it issued an order for Petitioner's arrest pursuant to ORS 144.350, which authorizes ODOC to order the arrest an AIC who has "(e)scaped from the supervision, custody or control" of ODOC. ORS 144.350(1)(a)(B); Pet'r Ex. 5 at 5. The next day, Petitioner was arrested and reincarcerated. Pet'r Ex. 12 at 3.

ODOC similarly recalculated the sentences of other persons it released pursuant to its initial interpretation of *Torres-Lopez I* and obtained their return to custody as "escapees" under ORS 144.350(1). An AIC who had been released and reincarcerated sought habeas corpus relief from the Oregon Supreme Court on grounds that ORS 144.350(1) did not authorize ODOC to arrest and reincarcerate him, because he was released based on ODOC's revised calculation of time-served credits. *See Arellano-Sanchez v. Thrasher*, 374 Or. 623, 628-29 (2025). The Oregon Supreme Court agreed and ordered his immediate release. *Id.* at 633 (finding that "it would strain the meaning of 'unlawful departure' to apply that term to a scenario where DOC makes a deliberate decision to release a person based on its application of the law to the undisputed facts, and later simply revises its view of the law"). The Oregon Supreme Court remarked that "it remains unclear how the state can proceed to resolve whether DOC lawfully released plaintiff," and explained that "to the extent that the state has identified a gap in the statutory scheme—another issue that we do not decide—filling that gap is an issue for legislative consideration." *Id.* at 637.

On the day *Arellano-Sanchez* was issued, the State moved to amend Petitioner's criminal judgment to remove the reference to "credit for time served" or "presentence incarceration credits pursuant to ORS 137.370(4)" under Count 7 as "erroneous" or a "clerical error" under ORS 137.172(1). Pet'r Ex. 2 at 2-3; Pet'r Ex. 3 at 3-4. The State argued that ODOC had "wrongly interpreted the holding in [*Torres-Lopez I*]—which involved concurrent, not consecutive sentences" and improperly granted Petitioner duplicate credit for time served. Pet'r Ex. 2 at 1. Even though ODOC had since recalculated Petitioner's sentence and applied time-served credits only once, the State argued that an amended judgment was necessary in light of the decision in *Arellano-Sanchez*. *Id.* at 2.

On January 7, 2026, while the State's motion to amend was pending, Petitioner filed a petition for writ of habeas corpus with the Oregon Supreme Court and sought his immediate release pursuant to *Arellano-Sanchez*. Pet'r Ex. 19 at 4.

On January 22, 2026, the trial court denied the State's motion to amend. Pet'r Ex. 3. While the trial court agreed that ODOC's initial interpretation of *Torres-Lopez I* and its award of duplicate credit for time served "was incorrect" and "reduced [Petitioner]'s negotiated sentences announced on the record," it found that the judgment's references to time-served credit were not "clerical errors" or clearly "erroneous" within the meaning of ORS 137.172(1). *Id.* at 2-6. The State then petitioned the Oregon Supreme Court for a writ of mandamus directing the trial court to vacate its order denying the State's motion to amend, and the Court denied the State's petition. Pet'r Exs. 5-6.

On January 27, 2026 , the Oregon Supreme Court granted Petitioner's habeas corpus petition and ordered his immediate release from custody, finding that ORS 144.350 did not authorize ODOC to order Petitioner's arrest and return to custody and, "[g]iven the trial court's

denial of the state's motion [to amend judgment] pursuant to ORS 137.172, that no other putative source of authority presently exists for [Petitioner's] imprisonment." Pet'r Ex. 4 at 8.

## IV. House Bill 4041

In March 2026, the Oregon Legislature passed House Bill (HB) 4041, which became effective on March 5, 2026. Or. Laws 2026, ch. 14, § 20. Under Section 7 of HB 4041, if the State or ODOC believes that a person was released from ODOC custody "as a result of a material error in sentence computation or legal interpretation," either entity can "petition the sentencing court for an order determining whether the person is lawfully subject to further incarceration." Or. Laws 2026, ch. 14, § 7(1)(a), (2)(a). If the trial court determines that "probable cause exists to support the claim that there was a material error in sentence computation or legal interpretation as stated in the petition," the trial court shall schedule a hearing within five days, order the person to appear, order the State or ODOC to provide notice of the hearing, and appoint the person counsel. *See* Or. Laws 2026, ch. 14, § 7(4)(a). Section 7 also authorizes the trial court to "order the arrest and detention of the person pending the hearing, or for the person to be held in custody pending the hearing, if the court additionally determines, by clear and convincing evidence, that such action is necessary for public safety." Or. Laws 2026, ch. 14, § 7(4)(b).

At the hearing, "the person has the right to be heard, to present evidence and to contest the claims set forth in the petition." Or. Laws 2026, ch. 14, § 7(5)(a). The trial court may return the person to ODOC custody "if the court finds, by clear and convincing evidence," that "[t]he person has not completed the sentence lawfully imposed by the court" and "has more than 30 days remaining on the sentence originally imposed." Or. Laws 2026, ch. 14, § 7(5)(b). Under

Section 9, the trial court may also "delete or modify any erroneous or ambiguous term in the judgment." Or. Laws 2026, ch. 14, § 9(1) (amending ORS 137.172).

### V. Petitioner's Return to Custody

On March 17, 2026, pursuant to HB 4041, the State moved to amend Petitioner's judgment of conviction, and the State and ODOC filed petitions for an order determining that Petitioner was lawfully subject to further incarceration. Pet'r Ex. 10-11. The State also filed a motion for an arrest warrant and pre-hearing detention of Petitioner on grounds that he posed a risk to public safety. Pet'r Ex. 8.

The trial court granted the State's motion for pre-hearing arrest and on March 23, 2026, Petitioner was arrested and detained. Pet'r Ex. 9. The trial court reappointed Petitioner's defense counsel, who filed an opposition to the pending motions and argued that: (1) Petitioner's pre-hearing arrest violated his procedural due process rights; (2) HB 4041 violates the *Ex Post Facto* Clause of the United State Constitution because "it operates retroactively to increase punishment after the original sentence was imposed and executed"; and (3) HB 4041 "functions as a bill of attainder" under the United States Constitution "by effectively imposing punishment on a defined group without trial." Pet'r Ex. 13 at 3-4.

On March 30, 2026, the trial court conducted a hearing on the State's and ODOC's motion and petitions. Resp't Ex. 102. The trial court rejected Petitioner's argument that his arrest violated his due process rights, explaining that it had found by clear and convincing evidence that Petitioner posed a risk to public safety and Petitioner subsequently received notice of the hearing, appointed counsel, and an opportunity to be heard. *Id.* at 19. The trial court also rejected the argument that HB 4041 constituted an *ex post facto* law, finding that "House Bill 4041 was

written to help figure out how to fix the error that was made in the calculations and … to come up with a system to figure out the sentencing recalculations there." *Id.*

With respect to the State's motion to amend the judgment, the trial court found:

> Frankly, this plea resulted came out of the settlement conference that I did with parties…. and it was very clear to me that the meeting of the minds, if you will, was that you were going to serve the sentences consecutively…. That being on count three, you would serve total of 31 months to Department of Corrections on count three. Then on count seven, that would be run consecutive, and that would be 25 months to Department of Corrections. For the record, it would have been clear in our discussions and … clear to me that we would have had the conversation in the settlement discussions as well, is that you didn't get what we call, you know, double-- there was no double-dipping. So you would get credit on one count, but you weren't going to get double credit for the count, the second count….You don't get to count it twice. So my intent was that you would serve as I see it, it was 56 months to the Department of Corrections, that's the consecutive time, minus the credit you would have received pre-incarceration credit and that would have been applied to that count three and so I will modify the judgment to state specifically that the credit will be applied to the count three and there's not gonna be double count for it.

*Id.* at 20- 21.

Following the hearing, the trial court granted the State's motion to amend the criminal judgment, granted relief on the petitions for further detention, and recommitted Petitioner to ODOC custody. Pet'r Exs. 14-15. The trial court also entered an amended judgment that included the following provision: "Credit for time served and pre-incarceration credit to be imposed one time. The Court's intent is that any credit for time served or pre-incarceration credit only be counted once for the total term of incarceration." Pet'r Ex. 16 at 3.

On April 28, 2026, Petitioner sought a peremptory or alternative writ of mandamus from the Oregon Supreme Court directing the trial court to vacate: (1) the Order granting the State's Petition for Further Detention under HB 4041; (2) the Order to Modify Ambiguous Term in Judgment; and (3) the Amended Judgment of Conviction. Pet'r Ex. 19. Petitioner argued that the Orders and Amended Judgment violated state and federal constitutional prohibitions against *ex*

*post facto* laws, were authorized by an unlawful bill of attainder, and were issued in violation of his procedural due process rights. The State opposed the petition on the merits but urged the Supreme Court to decide the case and address the constitutionality of HB 4041. Pet'r Ex. 20.

On June 2, 2026, the Oregon Supreme Court denied the petition for mandamus relief without explanation. Pet'r Ex. 21.

Separately, on March 30, 2026, Petitioner and others impacted by HB 4041 filed a proposed class action civil suit seeking declaratory and injunctive relief regarding the constitutionality of HB 4041. *Hernandez, et al. v. State of Oregon,* Case No. 26CV15022; Resp't Ex. 104. On April 24, 2026, the trial court issued a statewide temporary restraining order and preliminary injunction enjoining the implementation of the portions of HB 4041 that allowed for the reincarceration of Petitioner and others. By the time the Clackamas County Circuit Court issued the temporary restraining order, Petitioner was already in custody, so he did not benefit from the ruling. The case remains pending, but it is unclear whether Petitioner is still a member of the class. Resp't Ex. 105 at 3.

On June 24, 2026, Petitioner initiated this federal habeas action and later filed an Amended Petition for Writ of Habeas Corpus and an Emergency Motion for Release seeking his immediate release pending the outcome of this proceeding. The undersigned advised the parties that it intended to consider the merits of the Amended Petition contemporaneously with the Emergency Motion for Release and directed the parties to confer and submit a proposed briefing schedule.

The parties completed briefing as of July 28, 2026, and on August 10, 2026, the Court heard oral argument on the Amended Petition and Emergency Motion for Release.

## DISCUSSION

Petitioner's Amended Petition asserts three grounds for relief. *See generally* Am. Pet. (ECF No. 3). First, Petitioner claims that HB 4041 is an impermissible *ex post facto* law and the trial court "used this new statute to amend [Petitioner]'s judgment and order his arrest and reincarceration, removing pre-incarceration credits prescribed by the court and thereby increasing the length of his punishment beyond that ordered by the sentencing court." Am. Pet. at 8-10. Second, Petitioner alleges that HB 4041 is an unconstitutional bill of attainder because it "specifically target[ed] 38 individuals who had been released by ODOC for reincarceration and punishment beyond that prescribed by their sentencing judges," including Petitioner. *Id.* at 10. Third and finally, Petitioner claims that his confinement violates the Due Process Clause of the Fourteenth Amendment because he was entitled to pre-arrest process to determine whether HB 4041 could be constitutionally applied to him. *Id.* at 11.

In his Emergency Motion for Release, Petitioner argues that he is entitled to immediate release from custody because he is likely to prevail on his claims, the case involves "extraordinary circumstances," and he will likely serve the current term of his imprisonment "if the case is not resolve on an emergency basis and he is not released pending its resolution." Emer. Mot. at 1-2 (ECF No. 4).

Respondent contends that Petitioner's claims are unexhausted and barred from federal review because Petitioner bypassed direct appeal and post-conviction relief proceedings and sought only discretionary mandamus relief from the Oregon Supreme Court. Alternatively, Respondent argues that Petitioner's claims lack merit and were reasonably rejected by the trial court, and for the same reasons, that Petitioner is not entitled to emergency relief.

**I. Exhaustion of State Court Remedies**

A state habeas petitioner must exhaust all available state court remedies—either on direct appeal or through collateral proceedings—before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State"). To meet the exhaustion requirement, a petitioner must "fairly present" a federal claim to the State's highest court "in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam) (quotation marks omitted); *Cooper v. Neven*, 641 F.3d 322, 326-27 (9th Cir. 2011). "Comity…dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971) (explaining that exhaustion "reflects a policy of federal-state comity…designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights").

"A petitioner fully and fairly presents a claim to the state courts if he presents the claim (1) to the correct forum; (2) through the proper vehicle; and (3) by providing the factual and legal basis for the claim." *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009) (per curiam) (internal citations omitted). In particular, a petitioner must comply with state procedural rules and present a federal claim to the highest state court "in a procedural context in which its merits" will be considered, to ensure that the state court has a fair opportunity to address the merits of a federal claim. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). A petitioner's failure to exhaust

state court remedies may be excused only if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B).

Respondent argues that Petitioner has not fairly presented his claims to the Oregon courts in a context that would allow consideration of the merits, because he did not appeal the trial court's decision and has not sought post-conviction relief (PCR). Even though Petitioner can no longer pursue a direct appeal, Respondent maintains that he can still file a PCR petition and raise his claims of federal constitutional error before the Oregon courts. *See Strasser v. State*, 368 Or. 238, 271 (2021) ("Petitioner here did not obtain an appeal, so even if his claims of constitutional error by the trial court could have been raised in a direct appeal, they were not barred in post-conviction under ORS 138.550(2) or any other provision in the Post-Conviction Hearing Act."). Because a state PCR remedy remains available to Petitioner, Respondent argues that he has not exhausted his claims to allow federal habeas review.

Petitioner concedes that he did not pursue a direct appeal and has not filed a PCR petition. Petitioner nonetheless argues that he satisfied the exhaustion requirement by filing a petition for a writ of mandamus before the Oregon Supreme Court.[4]

However, the Supreme Court has held that a claim is not properly exhausted when it "has been presented for the first and only time in a procedural context in which its merits will not be considered unless 'there are special and important reasons therefor.'" *See Castille*, 489 U.S. at

[4] Petitioner also argues that he exhausted his claims in the proposed class action civil regarding the constitutionality of HB 4041. *Hernandez, et al. v. State of Oregon,* Case No. 26CV15022; Resp't Ex. 104. Even if a civil action could be a valid avenue for exhaustion, which is unlikely, the civil suit remains pending before the trial court and it is questionable whether Petitioner remains a member of the putative class. *See* Resp't Ex. 105 at 3. Regardless, Petitioner's claims in the civil action have not been fairly presented to the Oregon Supreme Court and that civil action cannot serve as the basis for exhaustion.

351 (rejecting the argument that "the submission of a new claim to a State's highest court on discretionary review constitutes a fair presentation."). Under Oregon law, "[m]andamus cannot be used as a substitute for appellate review." *Wise v. Hays*, 74 Or. App. 245, 245 (1985). Rather, it is an "extraordinary" remedy "and is not to be issued in any case when there is a 'plain, speedy and adequate remedy in the ordinary course of the law.'" *Id.* (quoting ORS 34.110). Thus, raising a claim for the first time in a discretionary petition for mandamus relief does not typically satisfy the exhaustion requirement. *See Casey v. Moore*, 386 F.3d 896, 917 (9th Cir. 2004) (concluding that the petitioner "did not fairly present his federal law claims when he raised them for the first and only time upon petitioning for discretionary review to the Washington State Supreme Court.").

Petitioner maintains that his mandamus petition was an appropriate avenue to present his federal claims, because direct appeal and PCR remedies were neither speedy, adequate, nor effective when he would serve the remainder of his sentence and be released from custody before an appeal or PCR petition could be resolved. Petitioner emphasizes that the State also believed mandamus was an appropriate forum to decide the merits of his claims, given that the State urged the Oregon Supreme Court to "exercise its discretion to consider a mandamus petition, as it raises recurring issues about the constitutionality of HB 4041" and represented that the "ordinary appellate process is thus unlikely to vindicate [Petitioner's] rights" due to his expected release from custody before completion of the appellate process. Pet'r Ex. 20 at 7, 27-28. Thus, Petitioner maintains that his petition for mandamus relief fairly presented his federal claims to the Oregon Supreme Court.

Regardless of the State's position, Oregon law makes clear that mandamus relief is not appropriate when another remedy is available. ORS 34.110; *see also State ex rel. Schrunk v.*

*Keys*, 97 Or. App. 65, 68 (1989) ("Generally, when a direct appeal is available, it is an adequate alternative remedy that precludes mandamus."). Aside from direct appeal proceedings, a PCR proceeding is "the *exclusive* means, after judgment rendered upon a conviction for a crime, for challenging the lawfulness of such judgment or the proceedings upon which it is based." ORS 138.540(1) (emphasis added). Petitioner cites no authority for the proposition that mandamus is a proper avenue of relief from a criminal judgment simply because the appeal or PCR process may not be completed before a petitioner's release from physical custody.[5] Based on the plain language of governing statutes, mandamus was not a viable avenue to challenge the legality of Petitioner's amended judgment or the proceedings under HB 4041.

Because PCR remedies remained available to Petitioner, his pursuit of mandamus relief did not present his claims in a proper procedural context that allowed review on the merits. *Castille*, 489 U.S. at 351; *see also Curry v. Cnty. of Washington*, No. 2:22-CV-00196-MO, 2022 WL 673633 *1 (D. Or. Feb. 22, 2022) (concluding that the exhaustion requirement was not satisfied by presenting a claim in "a mandamus application directly with the Oregon Supreme Court without first having presented the issue through the proper appellate channels"); *Ray v. Belleque*, No. 05-CV-948-TC, 2007 WL 1072110 *3 (D. Or. Apr. 3, 2007) (concluding that petitioner had failed to properly exhaust claims where he filed a mandamus petition with the Oregon Supreme Court rather than pursuing a direct appeal or PCR).

Finally, to the extent Petitioner argues that state court remedies were "ineffective" to protect his rights under § 2254(b)(1)(B)(ii) because he has little time left to serve and the PCR

[5] The Oregon cases cited by Petitioner did not involve a challenge to a judgment of conviction or sentence but rather addressed the lack of appointed counsel in a criminal proceeding and the threat of reprosecution in violation of double-jeopardy principles. *See State v. Roberts*, 374 Or. 821, 836 (2026); *State v. Moore*, 361 Or. 205, 212 (2017).

process will take too long, it is not persuasive. *See Markuson v. Boucher*, 175 U.S. 184, 185 (1899) (declining to excuse the petitioner's failure to exhaust when he alleged that he could not complete the appeals process "before the expiration of his sentence"). While the state process may take more time than he has left to serve, there is no evidence there is excessive delay as would be required to excuse exhaustion. *Coe v. Thurman*, 922 F.2d 528, 530-531 (9th Cir. 1990) (excessive delay may excuse exhaustion if it violates due process). If a petitioner's short sentence could excuse the exhaustion requirement under § 2254(b)(1)(B)(ii), any petitioner with a short sentence could forgo direct appeal and PCR proceedings and seek federal habeas relief based on the argument that the underlying sentence would be completed before the resolution of state-court proceedings.

Here, the direct appeal or PCR processes were not ineffective; a delay in a ruling is not sufficient to excuse the exhaustion requirement. As such, Petitioner's claims are subject to dismissal for failure to exhaust.

## II. Reasonableness of State Court Decision

Even if Petitioner exhausted his claims by seeking mandamus relief, Respondent argues that his claims should be denied on the merits. Respondent contends that the trial court reasonably rejected Petitioner's *ex post facto*, bill of attainder, and due process claims and its decision is entitled to deference.

Pursuant to 28 U.S.C. § 2254(d), this Court may not grant a petition for a writ of habeas corpus filed by a state prisoner with respect to any claim that was adjudicated on the merits in state court, unless the adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was

based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1) and (2).

A state court decision is "contrary to" clearly established federal law if it fails to apply the correct Supreme Court authority or reaches a different result in a case with facts "materially indistinguishable" from relevant Supreme Court precedent. *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an "unreasonable application" of clearly established federal law if the state court identifies the correct legal principle but applies it in an "objectively unreasonable" manner. *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) (per curiam). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Thus, "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793 (2001).

### ***A. Ex Post Facto Claim***

Petitioner argues that the trial court could not lawfully find him subject to further incarceration pursuant to HB 4041, because the bill constituted an *ex post facto* law that retroactively subjected him to increased punishment. The trial court rejected this argument, finding that "House Bill 4041 was written to help figure out how to fix the error that was made in the calculations and that it isn't an ex post facto law. It's to come up with a system to figure out the sentencing recalculations there." Resp't Ex. 102 at 19. In other words, the Jackson County trial court, in Petitioner's criminal case, found that HB 4041 did not constitute an *ex post facto*

law because it provided a procedural mechanism to address ODOC's erroneous application of duplicate time-served credit and ensure the correct calculation of Petitioner's term of incarceration. Given the record before this Court, the trial court did not unreasonably apply clearly established federal law. [6]

"To fall within the *ex post facto* prohibition, a law must be retrospective—that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citations omitted); *California Dept. of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995) (explaining that "the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable").

> Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it violates the Clause if it is both retrospective and more onerous than the law in effect on the date of the offense.

*Weaver v. Graham*, 450 U.S. 24, 30-31 (1981).

Here, HB 4041 did not alter the definition of Petitioner's criminal offenses or increase the prescribed punishment that could have been imposed at the time he committed them. Further, HB 4041 did not determine eligibility for time-served credits and did not dictate how ODOC

---

[6] This Court looks to the last "reasoned" state court decision to address Petitioner's claims. *Avila v. Galaza,* 297 F.3d 911, 918 (9th Cir. 2002) ("In determining whether a state court decision is contrary to federal law, we look to the state's last reasoned decision"). Because the Oregon Supreme Court denied mandamus relief without explanation, the trial court's ruling is the last reasoned decision.

calculates the sentences of AICs. In fact, ODOC determined that it mistakenly calculated duplicate time-served credits and recalculated Petitioner's sentence to correct that mistake *before* HB 4041's enactment; HB 4041 did not compel ODOC's retraction of duplicate credit for time served in Petitioner's case. Instead, HB 4041 provided a procedure by which Oregon trial courts may address sentencing calculations of persons released from ODOC custody "as a result of a material error in sentence computation or legal interpretation"—or in Petitioner's case, as a result of ODOC's initial interpretation of *Torres-Lopez I*. To that end, HB 4041 authorized the trial court to determine whether Petitioner and similarly situated persons were "lawfully subject to further incarceration" and to amend the relevant criminal judgment to clarify the sentence that was imposed. On its face, HB 4041 is procedural in nature and raises no *ex post facto* implications, as the *Ex Post Facto Clause* "does not apply to merely procedural laws." *Hampton v. Shinn*, 143 F.4th 1047, 1092 (9th Cir. 2025); *see also Dobbert v. Florida*, 432 U.S. 282, 293 (1977) ("Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto.").

Petitioner recognizes that the language of HB 4041 did not increase or impose punishment for his offenses. However, Petitioner argues that HB 4041 still runs afoul of the *Ex Post Facto* Clause under the Supreme Court's reasoning in *Garner v. Jones*, 529 U.S. 244 (2000) and *Lynce v. Mathis*, 519 U.S. 433 (1997), by creating a "significant risk" that Petitioner's punishment would be increased.

In *Garner*, the Supreme Court considered whether a state law violated the *Ex Post Facto* Clause by retroactively extending the time in which an AIC could seek reconsideration for parole. 529 U.S. at 247. At the time of his offense, the plaintiff could seek reconsideration for parole every three years; after the law passed, he could seek reconsideration only every eight

years. *Id*. The Supreme Court rejected the "supposition" that the laws' enactment "'seems certain' to result in some prisoners serving extended periods of incarceration." *Id.* at 255. The Court explained that when a law "does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Id.* Because the record "contained little information bearing on the level of risk created by the change in law," the Court found that the *ex post facto* claim "rests upon speculation." *Id.* at 256. Accordingly, the Court remanded the case for further proceedings to determine whether the law "in its operation, created a significant risk of increased punishment." *Id.* at 257.

In *Lynce*, the petitioner was released in 1992 after earning early-release credits under a state law in effect at the time of the petitioner's offense. 519 U.S. at 435-36. Shortly afterward, the state attorney general issued an opinion determining that a 1992 statute retroactively canceled such early-release credits, and the petitioner was rearrested and reincarcerated. *Id.* at 436. Before the Supreme Court, the petitioner argued that the law constituted an *ex post facto* law by effectively lengthening his sentence. After finding that the 1992 statute, as interpreted by the state, "was clearly retrospective," the Supreme Court concluded that it "unquestionably disadvantaged" the petitioner because it "retroactively canceled" early-release credits that the petitioner "was actually awarded" and resulted "in his rearrest and his prolonged imprisonment." *Id.* at 441, 446-47. The Court rejected the argument that the law was "merely procedural," because "the 1992 Florida statute did more than simply remove a mechanism that created an *opportunity* for early release… rather, it made ineligible for early release a class of prisoners who were previously eligible—including some, like petitioner, who had actually been released." *Id.*;

*see also Morales*, 514 U.S. at 505 (noting that "the *Ex Post Facto* Clause forbids the States to enhance the measure of punishment by altering the substantive 'formula' used to calculate the applicable sentencing range").

Petitioner argues that HB 4041 similarly disadvantaged him by targeting persons who were released after ODOC calculated duplicate time-served credits and authorizing the retroactive revocation of those credits to lengthen the punishment for his offenses. Petitioner maintains that, in accordance with ORS 137.370(4), the original judgment granted duplicate time-served credits for his "unrelated" offenses by "expressly" referencing the statute as to Count 3 and Count 7. Petitioner argues that ODOC was therefore required to calculate duplicate time-served credit and release him in September 2025 and that ODOC improperly ignored time-served credits under ORS 137.370(4) until the Oregon Supreme Court's decision in *Torres-Lopez I.* Petitioner maintains that the trial court's reliance on HB 4041 therefore resulted in the retroactive revocation of time-served credits that were "authorized by statute" at the time of his offense, and that, as in *Lynce*, he "was entitled to a type of credit when he committed and was sentenced for his crimes but was denied that credit based on a subsequent change" in the law. *See* Pet'r Mem. in Support at 12-13 (ECF No. 1-3).

The plain language of HB 4041 does not direct ODOC to apply a particular sentencing calculation to time-served credit and it does not render a class of AICs ineligible for duplicate time-served credit; it authorizes ODOC to petition the sentencing court if ODOC "determines that a person was released from the custody of the department as a result of a material error in sentence computation or legal interpretation." Or. Laws 2026, ch. 14, § 7(1)(a). Granted, HB 4041 arguably "disadvantaged" Petitioner by allowing the trial court to clarify whether he was entitled to duplicate credit for time served. However, ODOC had already determined Petitioner

was subject to further incarceration when HB 4041 was enacted, and the law had no effect on ODOC's calculation of Petitioner's sentence; it merely provided a procedural mechanism for the trial court to review the correctness of ODOC's recalculation. Moreover, unlike the circumstances in *Lynce*, it is not clear that Petitioner was entitled to and had been awarded duplicate credit for time served at the time of his offense.

Petitioner correctly states that ORS 137.730(4) allowed the trial court to "expressly" order duplicate credit for time served in cases involving "a crime or conduct that is not directly related to the crime for which the sentence is imposed." However, Count 7 was directly related to Count 3, as Petitioner's committed both offenses at the same location, during the same time period, and during the same course of conduct. Based on the clear language of ORS 137.730(4), the trial court did not have discretion to allow duplicate credit for Petitioner's presentence incarceration in Jackson County. Indeed, the record includes no suggestion that Petitioner, his counsel, or the trial court believed that he was eligible and should receive double credit for time served under both consecutive counts of conviction. Petitioner did not challenge ODOC's initial sentence calculation or otherwise claim entitlement to duplicate time-served credit, and Petitioner cites no authority aside from ORS 137.730(4) that required ODOC to award Petitioner duplicate time-served credit at the time of his offense.

Not until the Oregon Supreme Court issued the *Torres-Lopez I* decision and ODOC recalculated time-served credits did Petitioner arguably become eligible for duplicate credit, and these events occurred well after Petitioner committed his crimes, entered guilty pleas, and received a sentence in accordance with his negotiated settlement. Because ODOC's interpretation that Petitioner was entitled to duplicate time-served credit occurred after

Petitioner's conviction, the disallowance of duplicate credit in his amended judgment did not impose a greater punishment for Petitioner's crimes. *Lynce*, 519 U.S. at 441.

In arguing otherwise, Petitioner relies on the language of his original judgment and dicta in *Arellano-Sanchez*. Petitioner emphasizes that his initial judgment awarded credit for time served under ORS 137.370(4) as to both Count 3 and Count 7, and the written judgment controls. Further, Petitioner contends that the Oregon Supreme Court, when recounting ODOC's policy change to allow duplicate credit for time served, stated ODOC "determined that, under a correct interpretation of [ORS 137.370(4) and *Torres-Lopez I*], plaintiff's projected release date was in the past." *Arellano-Sanchez*, 374 Or. at 632-33. I remain unpersuaded.

First, it is unclear whether the references to ORS 137.370(4) in Petitioner's original judgment sufficed to "expressly" award duplicate credit for time served, particularly when the crime for which he would receive duplicate credit, Count 7, was directly related to Count 3. In *Torres-Lopez II*, the Oregon Supreme Court clarified that it had not interpreted ORS 137.370(4) or decided "what a judgment must say in other contexts covered by subsection (4) to reflect that the court had 'expressly order[ed]' double credit." 374 Or. at 425 n.1. Thus, whether Petitioner's original judgment entitled him to duplicate credit is an unresolved question of state law.

Second, the language in *Arellano-Sanchez* is not a declaration that ODOC correctly interpreted *Torres-Lopez I* to authorize duplicate credit for presentence incarceration in cases involving related, cumulative sentences. At issue in *Arellano-Sanchez* was only whether ODOC had authority under ORS 144.350 to rearrest released AICs, such as Petitioner, as escapees. The Oregon Supreme Court explained that it did not, because ODOC had not released those AICs based on a mistake but rather on what ODOC—not the Court—deemed to be "a correct interpretation of the law." *Arellano-Sanchez*, 374 Or. at 633. In fact, the Oregon Supreme Court

commented that "it remains unclear how the state can proceed to resolve whether DOC lawfully released plaintiff." *Id.* at 637. Thus, the Oregon Supreme Court did not rule on the propriety of ODOC's initial interpretation of *Torres-Lopez I* and whether it was legally required to release Petitioner and other similarly situated AICs.

In rejecting Petitioner's claims, the trial court concluded that ODOC's award of double credit was erroneous, and the trial court's determination of state law is not subject to federal review. Pet'r Ex. 102 at 19 ("The court does find that there was an error that occurred at DOC"); *see also* Pet'r Ex. 3 at 2 (trial court noting, "It is this Court's opinion that DOC's interpretation of *Torres-Lopez* was incorrect, particularly regarding cases involving consecutive sentencing."); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Mendez v. Small*, 298 F.3d 1154, 1158 (9th Cir. 2002) (declaring that state courts have "the last word on the interpretation of state law"). Accepting the trial court's finding that Petitioner was not awarded duplicate time-served credit, ODOC's retraction of improperly calculated credits did not retroactively increase his sentence.

For all of these reasons, the trial court did not unreasonably apply clearly established federal law under *Garner* and *Lynce* in finding that HB 4041 was not an *ex post facto* law, and Petitioner fails to establish entitlement to habeas relief on this claim.

### *B. Bill of Attainder Claim*

Petitioner also claims that HB 4041 is an unlawful bill of attainder by targeting specific individuals who were released by ODOC and subjecting them to increased punishment through the revocation of duplicate time served credit.

Article I, section 10 of the United States Constitution prohibits States from enacting "bills of attainder." A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977). Thus, Petitioner must establish that HB 4041 inflicts punishment on specific persons without judicial scrutiny. *See Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.*, 468 U.S. 841, 846-47 (1984); *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002).

Petitioner has arguably established the specificity element, given that HB 4041 is retroactive to the date of *Torres-Lopez I* and provided a mechanism to effectuate the potential reincarceration of persons who were released pursuant to ODOC's initial interpretation of *Torres-Lopez I*. *See* Or. Laws 2026, ch. 14, § 8 ("Section 7 of this 2026 Act applies to persons whom the Department of Corrections or the state has determined were released, on or after July 10, 2025, due to a material error in sentence computation or legal interpretation."). However, Petitioner fails to show that HB 4041 "inflicts" punishment without judicial "scrutiny."

To decide whether a statute inflicts punishment, a court weighs three factors: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish.'" *Selective Serv. Sys.*, 468 U.S. at 852 (quoting *Nixon*, 433 U.S. at 475-76, 478). As explained above, HB 4041 did not increase the length of Petitioner's sentence or dictate whether Petitioner's sentence was properly calculated or whether he is subject to further incarceration. HB 4041 merely authorized the State and ODOC to petition the sentencing court to determine whether a person is subject to further incarceration. *See* Or.

Laws 2026, ch. 14 § 7(1)(a), (2)(a). Petitioner thus fails to establish that HB 4041 "inflicts" punishment.

Alternatively, Petitioner cannot show that HB 4041 inflicts punishment without judicial scrutiny. Once the State or ODOC seeks a determination of further incarceration under HB 4041, the affected person is entitled to notice, the appointment of counsel, and a judicial hearing where the person "has the right to be heard, to present evidence, and to contest the claims set forth in the petition." *See* Or. Laws 2026, ch. 14, § 7(4)(a)(A) and (5)(a). Further, HB 4041 does not require a particular finding, and the trial court ultimately decides whether the person is subject to further incarceration. Here, Petitioner had his hearing, and the trial court (which was also the original sentencing court) concluded that ODOC had erred in granting double credit.

On this record, Petitioner fails to show entitlement to habeas relief under his bill of attainder claim.

### *C. Procedural Due Process Claim*

Finally, in Ground Three of his Amended Petition, Petitioner alleges that the procedures under which he was arrested and reincarcerated violated the Due Process Clause of the Fourteenth Amendment. Petitioner raised a similar claim at the trial court hearing on the HB 4041 petitions and the trial court rejected his argument. Resp't Ex. 102 at 19-20.

Petitioner essentially challenges the trial court's authorization of his "pre-hearing arrest" and argues that he was taken into custody in March 2026 without adequate procedural due process protections. *See* Pet'r Mem. in Support at 18-20. But Petitioner is not presently incarcerated pursuant to the arrest warrant issued in March 2026; instead, he is incarcerated pursuant to the trial court's subsequent determination, made after the hearing on the State's and ODOC's HB 4041 petitions, that he was subject to additional incarceration. Even if Petitioner

could demonstrate that the trial court unreasonably applied federal law in condoning his arrest under HB 4041, Petitioner fails to explain how that arrest invalidates the trial court's later determination that he had not served the complete term of imprisonment and was subject to additional incarceration. *See, e.g.*, *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (explaining that "illegal arrest or detention does not void a subsequent conviction."); *Terrovona v. Kincheloe*, 852 F.2d 424, 427 (9th Cir. 1988) (accord). And, Petitioner cannot claim that the trial court's determination was not accompanied by adequate procedural protections, as Petitioner received notice of the State's and ODOC petitions, was appointed counsel, and had the opportunity to be heard.

Petitioner's due process claim does not support the relief he seeks, and he is not entitled to habeas relief on this ground.

## RECOMMENDATION

The Amended Petition for Writ of Habeas Corpus (ECF No. 3) should be DENIED. As such, Petitioner fails to show that he is likely to prevail on his claims or that extraordinary circumstances warrant his release, and his Motion for Release (ECF No. 4) should also be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to de novo consideration of the factual issues addressed herein and

will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 19th day of August, 2026.

/s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge