ERIC J. DEITRICK OSB # 052322
STEVEN T. WAX, OSB #850120
Oregon Justice Resource Center
P.O. Box 5248
Portland, OR 97208
503-944-2270
edeitrick@ojrc.info
swax@oregoninnocence.info

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| JASON JOHN HATTON,<br><br>Petitioner,<br><br>vs.<br><br>CHASE ABSTON, Superintendent, Warner Creek Correctional Facility,<br><br>Respondent. | Civil Case No. 3:26-cv-01277<br><br>**PETITIONER'S OBJECTIONS TO FINDINGS AND RECOMMENDATIONS** |

Petitioner, Jason Hatton, pursuant to 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. 72, hereby objects to the following proposed Findings and Recommendations (F and R) and seeks de novo review:

1. That Mr. Hatton had not (a) exhausted his state remedies or (b) shown why the state process was ineffective so that he need not exhaust.
2. That his rights under the ex post facto and bill of attainder clauses had not been violated.

More specifically, Mr. Hatton submits the following objections to the proposed F and R:

1. The F and R undervalues the importance of the State's assertion to the Oregon Supreme Court that the "ordinary appellate process is thus unlikely to vindicate [Petitioner's] rights."
2. The F and R expresses an overly narrow view of the Oregon mandamus process.
3. The F and R erroneously concluded that the sentencing court's explicit reference to ORS 137.370(4) was either mistaken or incorrect.
4. The F and R erroneously failed to properly apply the holdings in *Jones v Garner*, 529 U.S. 244, 256-57, 120 S. Ct. 1362 (2000) and *Lynce v Mathis*, 519 U.S. 433, 117 S.Ct. 891 (1997) that a statute that appears procedural can violate the ex post facto clause when there is proof that it leads to an increase in the length of time a person is serving on a sentence.

I. <u>Mr. Hatton either exhausted his state remedies by petitioning the Oregon Supreme Court for mandamus, or the state process was ineffective.</u>

Mr. Hatton's argument on exhaustion hinges on the similarity between the Oregon standards for mandamus and the federal exhaustion requirement. As stated in ORS 34.110, "The writ shall not be issued in any case where there is a plain, speedy and adequate remedy in the ordinary course of the law." This is equivalent to the excusing of exhaustion in 28 U.S.C. § 2254(b)(ii) which provides that exhaustion can be excused when "circumstances exist that render such process ineffective to protect the rights of the applicant." Mr. Hatton properly sought mandamus in the Oregon Supreme Court because the Oregon Attorney General recognized and told the Oregon Supreme Court that the "ordinary appellate process is thus unlikely to vindicate [Petitioner's] rights." The F and R failed to give the Attorney General's statement to the Oregon

Supreme Court sufficient deference when it passed it off with the phrase "regardless of the State's position…" F and R at 16.

In glossing over the State's position, the F and R took too narrow a view of mandamus in Oregon. Petitioner appropriately sought mandamus relief because it was his only chance for a fair, speedy, and adequate remedy in state court. The F and R cites a line of cases and a statute that says mandamus is not available when a direct appeal is, and that post-conviction is the "exclusive" remedy in other circumstances. F and R at 16-17. Mr. Hatton does not question the citations in the F and R. The F and R, however, finds the discussion about the availability of mandamus when the normal state system cannot provide a "fair, speedy, and adequate remedy" in *State v. Roberts*, 374 Or. 821, 836 (2026), inapplicable to Mr. Hatton's situation. That finding ignores the fact that the State cited to *Roberts* in the portion of its brief in the mandamus in which it urged the Oregon Supreme Court to accept Mr. Hatton's petition. Ex. 20 at 22. The rules of comity that underlie much of the procedure applicable in federal habeas review of state prisoner petitions should require deference to the Attorney General's assertion. See, e.g. *Shoop v. Twyford,* 596 U.S. 811, 819 (2022) and numerous cases cited therein.

Additionally, in concluding that Petitioner's arguments on exhaustion were unpersuasive, the F and R relies on *Markuson v. Boucher*, 175 U.S. 184, 185 (1899) and states:

> While the state process may take more time than he has left to serve, there is no evidence there is excessive delay as would be required to excuse exhaustion. *Coe v. Thurman*, 922 F.2d 528, 530-531 (9th Cir. 1990) (excessive delay may excuse exhaustion if it violates due process). If a petitioner's short sentence could excuse the exhaustion requirement under § 2254(b)(1)(B)(ii), any petitioner with a short sentence could forgo direct appeal and PCR proceedings and seek federal habeas relief based on the argument that the underlying sentence would be completed before the resolution of state-court proceedings

F and R at 17-18. Mr. Hatton does not contend that anyone with a short sentence should be excused from exhaustion and be allowed to proceed directly to federal habeas relief, nor does he believe that providing him with habeas relief requires legal reasoning that would open the door to such filings. Indeed, Petitioner's Reply Brief acknowledged that "as a general proposition, mandamus will not satisfy the exhaustion requirement if the claim is presented in a procedural context in which the merits will not be considered unless there are 'special and important reasons therefore.'" Pet'r's Reply Brief, at page 5.

Mr. Hatton does argue, however, that the circumstances surrounding his imprisonment are sufficiently novel and extraordinary for this Court to conclude that state processes are ineffective to protect *his rights* in *these circumstances*, and that he did all he could do to protect his rights by presenting the claim to the Oregon Supreme Court in a mandamus proceeding and seeking an injunction against use of HB 4041. Mr. Hatton is not challenging his conviction, nor is he challenging a short sentence imposed following a conviction. Rather, he is challenging the circuit court's reliance upon a retroactive and targeted new law to reimprison him a third time for the same crime. This reimprisonment follows his being lawfully released from prison on two prior occasions. The reimprisonment occurred after the circuit court concluded there was no legal authority to amend his sentencing judgment to return him to prison. The amended judgment was issued 18 months after Mr. Hatton's original plea and sentencing.

The only right Mr. Hatton seeks to vindicate is his freedom. Oregon's Attorney General knew that vindicating this right in an ordinary appeal would be fruitless when it told the Oregon Supreme Court that an appeal is unlikely to vindicate those rights, concluding that Mr. Hatton's release date and the time it takes to litigate an appeal would likely moot an appeal. For the

foregoing reasons, the Attorney General's concession on this point should be awarded greater deference in this Court.

II. This Court should either reach the merits and grant relief, or it should withdraw the portion of the F and R that reaches the merits.

**A. The F and R's discussion of ORS 137.370(4) ignores state law and violates the principle of comity.**

The F and R concluded that the citation to ORS 137.370(4) in Mr. Hatton's judgment did not require granting him "double credit." F and R at 24-25. The F and R states:

> "Based on the clear language of ORS 137.730(4), the trial court did not have discretion to allow duplicate credit for Petitioner's presentence incarceration in Jackson County… F and R at 24."
>
> "Not until the Oregon Supreme Court issued the Torres-Lopez I decision and ODOC recalculated time-served credits did Petitioner arguably become eligible for duplicate credit, and these events occurred well after Petitioner committed his crimes, entered guilty pleas, and received a sentence in accordance with his negotiated settlement." F and R at 24.

Both statements are incorrect under Oregon law.

**1. The trial court did have authority to allow duplicative credit because the counts were not related.**

The language in Mr. Hatton's judgment satisfies the requirement of ORS 137.370(4). The judgment in Mr. Hatton's case included counts that the indictment specifically alleged "the act described above is separate and distinct from that alleged in the remaining counts." Pet'r's Ex. 5, pages 12-14. This language is inconsistent with the F and R that the counts were related. If the counts were related in the meaning of O.R.S. 137.370 (2) and (4), reference to subsection 4 would not only have been unnecessary but also incorrect. *Cf. State ex rel Torres-Lopez v. Fahrion*, 373 Or. 816, 832, 572 P.3d 1045 (2025) (*Torres-Lopez I*), *adh'd to as modified on recons*, 374 Or. 423, 579 P.3d 1056 (2025) (*Torres-Lopez II*) (discussing the avoidance of surplusage in statutory

interpretation); *Due-Donohue v. Beal*, 191 Or. App. 98, 101, 80 P.3d 529, 531 (2003) (discussing the principle of statutory construction that meaning should be given to every word).

**2. The original sentencing judgment, as written, unambiguously provided double credit.**

The settled law in Oregon is that a written judgment controls over an oral pronouncement by the sentencing court. *State v. Mossman*, 75 Or. App. 385, 388, 706 P.2d 203 (1985). Here, the language in the written judgment is somewhat more precise than that used in court. In court, the sentencing judge stated with respect to the judgment: "We will put in the language credit for any pre-incarceration, credit for any time served." Resp. Ex 101, p. 11-12. The written judgment did so with the use of the mandatory "shall" and reference to ORS 137.370(4). As a practical matter, it is necessary to reiterate that the judgments in Mr. Hatton's case were not ambiguous. Both counts included in Mr. Hatton's judgment include the language:

> Defendant may receive credit for time served. Defendant shall receive presentence incarceration credits pursuant to ORS 137.370(4).

There should be no question that the citation to subsection 4 in the judgment following use of the directive "shall" is not ambiguous and provides ODOC clear direction. The settled law that a written judgment controls over an oral pronouncement is even more applicable when an effort is made in a post hoc setting for a court to state what it intended in a clear written document. *See, e.g., State v. Jacobs*, 200 Or. App. 665, 672, 117 P.3d 290 (2005) (written judgments control over oral pronouncements). Moreover, allowing a court to "modify" what is clear on its face offends notions of finality in criminal judgments. *Cf. Watkins v. Ackley*, 370 Or. 604, 523 P.3d 86 (2022) (discussing the important value of finality of judgments in criminal proceedings). Whatever the sentencing judge's post hoc statements of her intent, the written judgment controls.

**3. The 2015 amendment to ORS 137.370(4), not the 2025 Oregon Supreme Court opinion in *Torres-Lopez I*, gave the sentencing court authority to award double credit.**

The F and R is also incorrect in stating that Mr. Hatton was not entitled to the credit on both counts until the decision in *Torres-Lopez I*. In *Torres-Lopez I,* the Oregon Supreme Court did not create any new rights to credit. Rather, it held that the ability of sentencing courts to grant double credit was created by the Legislature in 2015. That decision was not, and likely could not, determine that the 2015 amendment operated prospectively only from the date of the opinion. *See Halperin v. Pitts*, 352 Or. 482, 497, n4 (2012) ("The exercise of judicial discretion to apply interpretations of statutes only prospectively may raise significant constitutional issues concerning justiciability, equal treatment, and separation of powers"). Thus, at the time of Mr. Hatton's crime, the court had the discretion to utilize the amended ORS 137.370(4) and grant him credit. The F and R statement to the contrary (F and R at 24) is incorrect.

**B. The F and R's application of *Garner v. Jones* and *Lynce v. Mathis* is incorrect.**

The F and R concluded that HB 4041 is purely procedural and therefore is not an ex post facto law. F and R at 21-25. *Garner* and *Lynce* dictate the contrary conclusion.

In *Garner*, after the petitioner's crime and sentencing, the Georgia legislature increased the period between review of parole eligibility. The statute did not either require or prevent parole. Rather, the decision on parole remained entirely discretionary. The question before the Court was whether that procedural change produced a significant risk that Mr. Garner would serve more time on his sentence because of the delay in hearings. 529 U.S. at 247. The decision of the Court was that Mr. Garner *could* be eligible for habeas relief if he could demonstrate a significant risk of the increased time between hearings. 529 U.S. at 257.

Similarly, the statute here does not require any particular result. It does, however, increase the situations in which the Oregon Department of Corrections and Oregon circuit courts can revisit sentences previously imposed. While this is the obverse of the situation in *Garner* (more authority rather than less), the principle is the same. As the Oregon Supreme Court recognized in Mr. Hatton's state habeas corpus case, neither ODOC nor the trial court had authority as of January 2026 to arrest, imprison or amend his sentence. *Hatton v. Sundquist* 374 Or. 739, 743 (2026) ("Given the trial court's denial of the state's motion pursuant to ORS 137.172, no other putative source of authority presently exists for plaintiff's imprisonment"). That authority was only created in March 2026 and exercised against Mr. Hatton in March and April when he was rearrested and his judgments were amended to alter and strike the language in his original judgments.

Unlike the situation in *Garner*, the harm to Mr. Hatton is on the record—he is in custody serving a sentence without the benefit of the double counting originally granted.

In *Lynce*, as in Mr. Hatton's case, the law at the time of his crime and sentencing granted eligibility for certain credits. The statute was amended in a manner that denied Lynce credits. That amendment was not, however, applied to him; he was granted the credits and released. While at liberty, the Florida Attorney General issued an opinion applying the new statute retroactively and Mr. Lynce was arrested and reincarcerated. 519 U.S. at 449-50. As Justice Thomas wrote in concurring:

> I agree with the Court that the State's retroactive nullification of petitioner's previously accrued, and then used, release credits violates the Constitution's ban on *ex post facto* lawmaking.

*Id*. at 450.

Mr. Hatton's release was, as was Mr. Lynce's, based on an Attorney General opinion on the applicability of a statute. Mr. Hatton's reincarceration was, as was Mr. Lynce's, based on

application of a new statute based on an interpretation by the state Attorney General. Proof of the harm from application of the new statute and interpretation is the same in both cases—reincarceration to serve more time on the original sentence without application of the favorable credits.

The actual increase in punishment Mr. Hatton is presently experiencing is the foundation for both his ex post facto and bill of attainder claims. As in *Garner* and *Lynce*, habeas relief should be granted.

**C. Alternatively, under 28 U.S.C. 2254(b)(2) this court should not exercise its discretion to reach to reach the merits and defer to the decision of the Jackson County Court in light of the issuance of a preliminary injunction in the Clackamas County Circuit Court.**

Mr. Hatton believes that he has either properly exhausted his state court remedies or shown that they are ineffective to vindicate his rights, as argued in section I above. If, however, this Court rejects his analysis, he urges the court to strike the portion of the F and R that addresses the merits and either find that he has prevailed on the merits as argued in section II, subsection A and B, above, or decline to reach the merits for the reasons stated below.

While the F and R recognized that the Clackamas County Circuit Court has found that HB 4041 violates both the ex post facto and bill of attainder clauses (F and R at 12) and ordered a statewide temporary restraining order and preliminary injunction, it gave that court no deference. Principles of comity and the deference due state courts in habeas corpus dictate otherwise.

The Jackson County Court to which the F and R deferred did not write a reasoned opinion on the federal issues. The Clackamas County Circuit Court did. If this Court concludes that Mr. Hatton's case is not properly before this Court, it is unseemly and inconsistent with the principles

of comity and deference for the federal court to elevate one lower court opinion over the other when the state's appellate courts have not decided the issue.

Under 28 U.S.C. 2254(b)(2), an application for a writ of habeas corpus "may" be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. The competing decisions of the lower Oregon courts is the type of situation in which this Court abstaining from decision is appropriate.

CONCLUSION

For all of the reasons set forth herein and in Mr. Hatton's prior filings in this case, this Court should decline to adopt the Findings and Recommendations of the Magistrate Judge, grant the petition for a writ of habeas corpus, and order Mr. Hatton's immediate release.

RESPECTFULLY SUBMITTED this 26th Day of August, 2026.

/s/ *Eric J. Deitrick*

Eric J. Deitrick, OSB #052322
edeitrick@ojrc.info
Steven T. Wax, OSB #850120
swax@oregoninnocence.info
503-944-2270
Oregon Justice Resource Center
P.O. Box 5248
Portland, Oregon 97208

Attorneys for Petitioner